## Wytheville.

RICHMOND MORTGAGE AND LOAN CORPORATION v. JOHN E. ROSE, COMMISSIONER.

June 11, 1925.

Argued before Judge Chichester took his seat.

1. BROKERS—*Common Law Definition—Extent of Meaning of Term.*—At common law a broker is a mere agent employed to make bargains and contracts between other persons in matters of trade, commerce or navigation, for a compensation, commonly called brokerage. The term "broker," however, is no longer limited, but extends to almost every branch of business—to realty as well as personalty. In fact, so extensive has the term "broker" become, that the legislature no longer deals with the various classes of brokers, but in the tax bill to provide revenue for the running of the government it only specifies shipbrokers, stockbrokers and pawnbrokers.

2. BROKERS—*Definition of Stockbroker—Extent of Meaning of Term.*—Properly speaking, a stockbroker is one who buys and sells shares in a corporation. But the legislature, in section 75 of the tax bill, Acts of 1903, chapter 148, as amended Acts of 1915, chapter 148 (Code of 1924, page 1866), without reference to either the common law idea or the modern idea of a broker has made the definition of a stockbroker most comprehensive.

3. BROKERS—*Stockbrokers—Taxation—Classes of Business Reached by Section 75 of the Tax Bill.*—Three classes of business are sought to be reached by the license tax imposed by section 75 of the tax bill, Code of 1924, page 1866. First: Persons who deal in the intangibles enumerated; second: Those who sell these intangibles or derive therefrom other compensation; third: Those who negotiate loans upon real estate security, except a licensed attorney at law.

4. BROKERS—*Stockbrokers—License Tax Imposed by Sections 75, 76 of the Tax Bill—One Selling Bonds Based on Hypothecated Notes Secured by Trust Deed—Case at Bar.*—In the instant case, plaintiff in error purchased from the holder promissory notes secured by deed of trust on real estate. It would then hypothecate these notes with a trustee to secure an issue of its own bonds, and then sell these bonds to the public, either by wholesale or retail. This constituted the entire business of the plaintiff in error.

*Held:* Plaintiff in error was a stockbroker, under sections 75, 76 of the tax bill, Code of 1924, page 1866, and subject to the license tax imposed by those sections.

5. WORDS AND PHRASES—*Deal.*—To deal in a commodity is to negotiate or make bargains in respect of that commodity, to traffic therein as buyer or seller, or otherwise engage in mutual intercourse, or transaction in respect thereto. The purpose being to accomplish a change from one to another of interest in or title to property, to deal in stock, cattle and horses, therefore, is to engage in the business of buying and selling such property with the object of gain.

6. BROKERS—*Stockbrokers—License Tax Imposed by Section 75, 76 of the Tax Bill—One Selling Bonds Based on Hypothecated Notes Secured by Trust Deed—Case at Bar.*—The law will not permit one to do indirectly that which it prohibits one from doing directly. When the plaintiff in error bought notes secured by a deed of trust and hypothecated them with a trustee to secure its own bonds in issuing its bonds it is negotiating in respect, not to the evidence of debt, but to the debt itself. It makes a business of negotiating loans upon real estate security, to-wit, the notes secured by deed of trust upon real estate, and it is subject to the license tax imposed by section 75 of the tax bill, Code of 1924, page 1866.

7. BROKERS—*Stockbrokers—Who is a Dealer*—The fact that one occasionally buys a government bond and then sells the same does not constitute him a stockbroker, though in a sense he is dealing in stocks. The test of who is a dealer is whether such person engages in the transaction as a business or merely sells incidentally.

8. APPEAL AND ERROR—*Assignment of Errors—Cross Assignment—Facts Certified.*—Where there is nothing in the statement of facts certified by the lower court relative to the matter upon which a cross assignment of error is based, the appellate court cannot consider the cross assignment.

Error to a judgment of the Hustings Court of the city of Richmond on application for exoneration from the assessment of a license tax. Judgment for defendant. Petitioner assigns error.

*Affirmed.*

The opinion states the case.

*Leake & Buford* and *Thomas L. Preston,* for the plaintiff in error.

*E. Warren Wall,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is a writ of error to the Hustings Court of the city of Richmond, denying relief to the plaintiff in error, upon its application for exoneration from the assessment of a license tax as a stockbroker for the years 1919 to 1922 inclusive.

The order entered by the court which sets out the facts of the case is as follows:

"This cause came on this day to be heard by this court upon the petition of the Richmond Mortgage and Loan Corporation, the testimony of witnesses, a written statement of facts agreed to by the parties, and the argument of counsel. The court doth certify that the facts proved in this proceeding were as follows, which were all the facts testified or agreed to:

"The Richmond Mortgage and Loan Corporation, hereinafter called the corporation, is a corporation duly organized under the laws of the State of Virginia and has its only place of business in the city of Richmond. The corporation has paid in capital stock of $350,000.00 consisting of 3,500 shares of the par value of $100.00 each. The corporation paid, for the years 1919, 1920, 1921 and 1922, an income tax under section 10 of the tax bill, amounting in each year, respectively, to the sum of $38.46, $31.32, $54.43 and $137.72; and further paid in each of said years a tax on its capital under section 8 of the tax bill, amounting to $300.00. The corporation was, on or about the 8th day of December, 1922, assessed for the years 1919 to 1922, inclusive, by the commissioner of revenue for the city of Richmond, with omitted taxes, the same being the stockbroker's license tax prescribed by sections 75 and 76 of an act approved April 16, 1903, commonly called the tax bill (Acts 1903, C. 148), as amended in the year 1915

(Acts Ex. Sess. 1915, C. 148), in the amounts set forth in the petition herein.

"The corporation's method of doing business during the whole of the years 1919 to 1922, inclusive, was, and still is, to purchase from the holder thereof notes secured by deeds of trust on real estate, such notes representing private and individual loans made by said holder.

"The corporation then hypothecated or pledged, and still does hypothecate or pledge, the notes purchased as aforesaid with a trustee under a collateral trust agreement to secure an issue of the corporation's own bonds. The corporation then issued, and still issues, its bonds, secured as aforesaid, and stating on their face that they are so secured, and countersigned by the trustee aforesaid, selling these bonds, usually the entire issue at one time and for a lump sum, but occasionally causing its bonds to be sold for its account in small quantities on the open market, paying, in some instances, a commission therefor.

"The procedure above outlined constitutes the sole and entire business in which the corporation engaged in the years 1919 to 1922, inclusive, or in which it now engages.

"Petitioner moved the court to exonerate it from the payment of the stockbroker's license tax assessed in the manner and for the years set forth in its application and in the agreed statement of facts aforesaid, which motion was defended by the attorney for the Commonwealth, and touching which application the commissioner of revenue for the city of Richmond, who made the assessment, was examined as a witness.

"The assessments under consideration were made within one year prior to the filing of the petition herein.

"On consideration of said petition and the facts

proved, the court is satisfied that the said assessment complained of is not erroneous, as complained of in said motion, and it is, therefore, ordered that the said application and motion be denied and that the applicant, Richmond Mortgage and Loan Corporation, do pay the costs of this proceeding."

[1] At common law a broker is a mere agent employed to make bargains and contracts between other persons in matters of trade, commerce or navigation, for a compensation, commonly called brokerage. The term broker, however, is no longer limited, but extends to almost every branch of business—to realty as well as personalty.

In fact, so extensive has the term broker become that the legislature no longer deals with the various classes of brokers, but in the tax bill to provide revenue for the running of the government it only specifies shipbrokers, stockbrokers and pawnbrokers.

[2] Properly speaking, a stockbroker is one who buys and sells shares in a corporation. Anderson's Dictionary of Law, page 139. The legislature, without reference to either the common law idea, or the modern idea, of a broker, has by enactment defined a stockbroker, in section 75 of the tax bill, as follows: "Any person, firm, bank or corporation that deals in coin, foreign or domestic, exchange, government stock, or other certificates of debt, or shares in any corporation or chartered company, bank notes or other notes used in currency, or who sells the same or any of them on commission or for other compensation, or who negotiates loans upon real estate security, except a licensed attorney at law, shall be deemed to be a stockbroker."

The intent of the legislature to make the definition of a stockbroker most comprehensive is plain enough.

[3] Three classes of business are sought to be reached by this license tax:

First: Persons who deal in the intangibles enumerated;

Second: Those who sell these intangibles or derive therefrom other compensation;

Third: Those who negotiate loans upon real estate security, except a licensed attorney at law.

[4] As observed in the statement of facts, the method of conducting its business was as follows: Plaintiff in error purchased from the holder promissory notes secured by deed of trust on real estate. It would then hypothecate these notes with a trustee to secure an issue of its own bonds, and then sell these bonds to the public, either by wholesale or retail. The entire business of plaintiff in error, it is thus seen, was to buy, and, as contended, hypothecate—not sell—these notes.

But is this contention that these notes so purchased are merely hypothecated and not sold, so as to relieve the plaintiff in error of the license tax imposed on it as a dealer in such certificates of debt, tenable?

The further contention of the plaintiff is that "to deal in" means purchased, coupled with resale of the identical thing bought.

[5] In Words and Phrases, the definition given of the word "deal" is as follows: "To deal in a commodity is to negotiate or make bargains in respect of that commodity to traffic therein as buyer or seller or otherwise engage in mutual intercourse or transaction in respect thereto. The purpose being to accomplish a change from one to another of interest in or title to property, to deal in stock, cattle and horses, therefore, is to engage in the business of buying and selling such property with the object of gain."

The business conducted by the plaintiff falls within this definition. It buys not merely the paper which is the evidence of the debt, but it buys the debt itself.

The intrinsic value of the paper is *nil.* If the note—the mere evidence of the debt—should be destroyed, this would not liquidate the debt it represents.

[6, 7] The law will not permit one to do indirectly that which it prohibits one from doing directly. When the plaintiff in error issues its own bonds, it is negotiating in respect, not to the evidence of debt, but to the debt itself. It makes a business of negotiating loans upon real estate security, to-wit, the notes secured by deed of trust upon real estate. The fact that one occasionally buys a government bond and then sells the same does not constitute him a stockbroker, though in a sense he is dealing in stocks. The test of who is a dealer is whether such person engages in the transaction as a business or merely sells incidentally.

To our mind it is clear that the plaintiff in error falls both within the terms and the spirit of the statute.

Cross error is assigned by the defendant as follows:

"It appears from the record the plaintiff in error has a paid in capital stock of $350,000.00. It is admitted that this amount at least constitutes the capital of the petitioner used or employed in its business. It further appears from the allegation made by the plaintiff in error that it has paid taxes upon capital amounting to only $300.00 per year. Even if the taxable capital of the corporation was not greater than the paid in capital stock; that is, if there was no surplus and the only property taxable as capital was the paid in capital stock, then the amount of State taxes assessable upon such capital should have been at least $2,975.00 per year, and the local taxes assessable thereon should have been $1,050.00 per year. It, therefore, appears that of the $4,025.00 taxes due the city and State for each of the years in question, it has only paid $300.00 per year, leaving a balance of $3,725.00 per year. Unquestion-

ably, on authority of *Commonwealth* v. *Schmelz*, 114 Va. 364, 76 S. E. 905, when this petition was filed, it became the duty of the lower court to inquire into the taxation of the company's capital."

[8] As there is nothing in the statement of facts certified by the lower court relative to the matter upon which this assignment is based, this court cannot consider this cross assignment of error.

Upon the whole case, we are of the opinion that there is no error in the judgment complained of and it will be affirmed.

*Affirmed.*

WEST, J., dissenting.